IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Walker D. Miller

Civil Action No. 02-WM-00830-WDM-MEH

HARRY PTASYNSKI,

   Plaintiff(s),

v.

CO2 CLAIMS COALITION, LLC, BILL BEARD AND SIDNEY R. CLARKE, III,

   Defendant(s).
_____

## ORDER CONCERNING DECLARATORY RELIEF
_____

This case proceeded to trial on Plaintiff's remaining seven claims on April 16, 2007. On April 20, 2007, the jury returned a verdict in favor of the Defendants and against the Plaintiff on Plaintiff's claims of theft, breach of contract, breach of fiduciary duties, breach of statutory duties, tortious interference with contract, conspiracy and negligence. This order addresses Plaintiff's sole remaining claim seeking declaratory relief which was tried to the court.

In accordance with the Final Pretrial Order (doc. no. 230) Plaintiff seeks a declaratory judgment that he was a member of the Defendant CO2 Claims Coalition, LLC (Coalition) who has a right to vote in Coalition matters and that he is entitled to his rights under Colorado law. In particular, Plaintiff has argued that he is entitled to receive his share of the profits or other compensation of the Coalition pursuant to

1

C.R.S. § 7-80-603.  As presented and argued, the issues devolved down to whether the Plaintiff remained a member of the limited liability company (Coalition) and, whether or not a member, was he entitled to profits or compensation in addition to the return of his contribution.

The membership issue was whether Plaintiff had withdrawn or resigned or whether he was removed or discharged because of his actions in pursuing litigation in Texas separate from, and perhaps in conflict with, the Coalition litigation.  For the reasons stated on the record, Plaintiff withdrew no later than his January 7, 2002 letter to the Coalition administrator that he opted out of the settlement.  (Exhibit 48).  My ruling on the record was pursuant to Fed. R. Civ. P. 50 that a reasonable jury could not find that Plaintiff remained a member.  In his declaratory judgment claim, Plaintiff has failed to prove by a preponderance of the evidence that he remained a full member of the Coalition.  Indeed, the evidence is essentially unrebutted that Plaintiff was repeatedly presented with the option of remaining in the Coalition or withdrawing.  If he remained in the Coalition he would receive a *pro rata* portion of the settlement in exchange for his full release of all claims against the defendant production companies.  If he opted out, the settlement amount payable to the Coalition was reduced *pro rata* and the Plaintiff preserved his claims against the defendant production companies.  These claims included an existing judgment in Plaintiff's favor in the Texas litigation which was on appeal to the Fifth Circuit Court of Appeals.  Accordingly, as Defendant argued, Plaintiff had a choice between a "bird in the hand" (Coalition settlement) or "two in the bush" (Texas judgment subject to reversal on appeal).  He plainly chose the

latter. Unfortunately for him, the Fifth Circuit reversed his judgment after he had withdrawn from the Coalition.

Even assuming he is no longer a member, Plaintiff has argued he is nevertheless entitled to his *pro rata* share of the Coalition's value pursuant to C.R.S. 7-80-603, which provides:

> A member who has resigned or withdrawn shall have no right to participate in the management of the business and affairs of the limited liability company and is entitled only to receive the share of the profits or other compensation by way of income and the return of contributions, to which such member would have been entitled *if the member had not resigned or withdrawn.* (Emphasis added.)

Plaintiff urges that this statute establishes his withdrawal merely terminated his rights to participate in the management of the Coalition while he retained his ongoing *pro rata* financial interest in the Coalition as "if [he] had not resigned or withdrawn." On the other hand, Defendants argue that the withdrawing member's entitlement is limited to a *pro rata* interest in the value of the LLC at the time of withdrawal. Given the uncontested testimony that the Coalition had a negative net worth on a cash basis at the time of withdrawal, Defendants argue that Plaintiff's entitlement was accordingly nil.

Without specifically deciding this issue, I find that the plain meaning of § 603 supports Plaintiff's position. Moreover, this interpretation is bolstered by a comparison with the prior version of this section, which specifically provided an LLC member with a right to "the *fair value* of his membership interest . . . *as of the date of resignation*." § 603 (1993) (emphasis added). In effect, the newer version of § 603 limits a withdrawing member's ability to withdraw his financial contribution, forcing him to

3

continue to share in whatever profits or losses the LLC may experience. Finally, I would note that this interpretation of the change in Colorado's statute is consistent with a nationwide trend observed by commentators. *See* Sandra K. Miller, *What Buy-Out Rights, Fiduciary Duties, and Dissolution Remedies Should Apply in the Case of the Minority Owner of a Limited Liability Company?* 38 Harv. J. on Legis. 413, 414-15 & n.4 (2001) (noting that "[o]riginally, most LLC statutes provided that the LLC member could withdraw and obtain the fair market value of his or her LLC interest," but citing the newer version of Colo. Rev. Stat. § 7-80-603 as one of "a growing number of LLC statutes" that, unless otherwise provided in the LLC agreement, eliminate the right to withdraw or the right to fair market value); Mary Siegel, *Fiduciary Duty Myths in Close Corporate Law*, 29 Del. J. Corp. L. 377, 466 & n.478 (noting a "trend toward eliminating at-will dissolution rights in limited liability entities," and citing the newer version of § 603 in support); *see also* Risa Lyn Wolf-Smith, *Colorado LLCs: New and Improved*, 23 Colo. Law 1473 (1994) (noting that "the amended Act provides for continuing distributions to [a] resigning member"); Cal. Corp. Code § 17252 (West 2007) (providing that a "withdrawn member shall not be entitled to payment for the member's interest in the limited liability company, and, *beginning on the date of the withdrawal*, the withdrawn member shall have only the right of a holder of an economic interest") (emphasis added); R.I. Gen. Laws § 7-16-29 (2006) (providing that "the withdrawn member . . . do[es] not have the right to receive any distribution by reason of the withdrawal but ha[s] only the rights of an assignee to receive distributions as to the withdrawn member's interest *during any continuation of the business*").

Assuming Plaintiff would have some legal entitlement to compensation under § 603 as a withdrawn member, I nevertheless find and conclude that he has failed to prove by a preponderance of the evidence what that entitlement would be. Plaintiff made no expert evidence on what his damages were. Plaintiff made no presentation of what was received by the Coalition in the settlement, how it was divided among members of the Coalition, what the Coalition's expenses were or what Plaintiff's share of any net return should have been. At trial, Plaintiff tied his damage claims to estimates of alternative possible recoveries if the Coalition was successful at trial (Exhibit 23). The estimates were apparently prepared by the Coalition's attorney and no explanation was provided for how they were computed. Importantly, no comparison was provided to the ultimate settlement figures.

Further, if I were somehow to divine what Plaintiff's gross share of the settlement would have been, no evidence or argument is provided how the return of Plaintiff's contribution or his maintenance of his unreleased claims should be debited or credited against any amount allocable to Plaintiff. For example, the uncontested testimony is that, because of Plaintiff's withdrawal from the settlement, the actual settlement amount was reduced on a *pro rata* basis. Does that mean that whatever Plaintiff's *pro rata* share would have been must be debited the amount of reduced payment from the defendant companies? If not, don't Plaintiff's actions reduce the settlement to which all other members would be entitled?

As these questions demonstrate, there has been a failure of proof on the part of the Plaintiff. To arrive at any damage figure would be surmise, speculation or guess

5

work.  As the jury was instructed (Instruction No. 30), reasonable damages cannot be determined in such a manner.

Accordingly, it is ordered:

1.  Plaintiff's claim for declaratory relief is denied and shall be dismissed with prejudice; and

2.  Defendants may have their costs.

DATED at Denver, Colorado, on May 3, 2007.

BY THE COURT:

s/ Walker D. Miller
United States District Judge